# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELINDA SHAWN MASON | : | CIVIL ACTION |
| o/b/o PERRY MASON (deceased) | : | |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of | : | |
| Social Security | : | NO. 22-3141 |

## O P I N I O N

SCOTT W. REID                                                                                 DATE:  January 18, 2023
UNITED STATES MAGISTRATE JUDGE

       Perry Mason ("Mason") filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  However, he passed away from COVID on April 14, 2021, while his action was pending.  Record at 176.  His wife, Melinda Shawn Mason, was substituted as a party of interest.  Record at 177, 204.  She brings this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying benefits.  Ms. Mason has filed a Request for Review to which the Commissioner has responded.  For the reasons discussed below, I will deny her Request for Review, and order that judgment be entered in favor of the Commissioner.

I.      *Factual and Procedural Background*

       Mason was born on November 18, 1964.  Record at 243.  He completed high school. Record at 291.  Mason worked for many years as a manager in a drug store.  *Id*.  On April 22, 2020, he filed applications for DIB and SSI, alleging disability as of October 10, 2019, caused by gastroesophageal reflux disease ("GERD"), Type II diabetes, and peripheral neuropathy.  Record at 243, 250, 290.  Mason's disability date was later amended to November 17, 2019, the day before he turned 55.  Record at 16, 39.

Mason's applications for benefits were denied initially and upon reconsideration. Record at 118, 123, 127, 137. Mason then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 237. A hearing, at which Ms. Mason appeared, was held in this matter on July 13, 2021. Record at 33.

On August 4, 2021, the ALJ issued a written decision denying benefits. Record at 16. The Appeals Council denied Ms. Mason's request for review on June 7, 2022, permitting the ALJ's decision to stand as the final decision of the Commissioner of Social Security. Record at 1. Ms. Mason then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration

>requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

>(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.  *The ALJ's Decision and the Claimant's Request for Review*

In his decision, the ALJ found that, prior to his demise, Mason suffered from the severe impairments of diabetes with peripheral neuropathy, and a vision disorder including diabetic retinopathy. Record at 19. He also suffered from GERD, psoriasis, hypertension and hyperlipidemia, but the ALJ found that these were well controlled by medication and were not severe. *Id*. Mason was also mildly obese, which the ALJ stated that he accounted for in considering Mason's functional abilities. *Id*. The ALJ found that none of Mason's impairments, and no combination of impairments met or medically equaled a listed impairment. Record at 19-20.

3

The ALJ decided that, during the period under consideration, Mason retained the RFC to work at the medium exertional level with the following limitations:

> He could have frequently [as opposed to constantly] used hand controls and foot controls, and frequently reached, handled, and fingered. He could not have climbed ropes, ladders, or scaffolds. He could have performed all other postural activities no more than frequently. He could have tolerated occasional exposure to unprotected heights, moving mechanical parts, extreme temperatures, humidity, and vibration. He could not have operated a motor vehicle. He would have had difficulty reading fine print and working with small objects, but he retained sufficient visual acuity to read normal print, work with regular-sized objects, and avoid ordinary workplace hazards.

Record at 20.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ concluded at stage four of the sequential analysis that Mason could have returned to his prior relevant work as a drugstore manager. Record at 25. Alternatively, at stage five, the ALJ specified that Mason's RFC would have permitted him to work as a bagger, candy spreader, or patient transporter. Record at 26. He added:

> Notably, the above jobs would have been available even were the claimant's visual limitations more restrictive. That is, at the hearing, I asked the vocational expert what effect would there have been if the claimant's residual functional capacity had more visual restrictions (i.e., having difficulty reading normal print or working with regular sized objects and being able to only read large print and only work with large objects). The vocational expert provided the above jobs in response to that question.

*Id.* On this basis, the ALJ decided that Mason was not disabled prior to contracting COVID. Record at 27.

In her Request for Review, Ms. Mason argues that the ALJ's RFC assessment is deficient in that he failed to properly evaluate the opinion of consulting physician Lee Saltzgaber, M.D., and failed to incorporate parts of the opinion of consulting vision specialist Zissie Siokos, O.D. Ms. Mason also maintains that the ALJ failed to assess her subjective allegations regarding her husband in accordance with SSR 16-3p.

4

IV.   *Discussion*

    A.   *Dr. Saltzgaber's Report*

Dr. Saltzgaber, an independent medical consultant, examined Mason on July 21, 2020. Record at 506. He reported: "Gait normal. Can walk on heels and toes without difficulty. Squat full. Stance normal." Record at 508. Mason used no assistive device to walk, could rise from a chair with no difficulty, and needed no assistance to get on or off the examination table. *Id*. Dr. Saltzgaber found no musculoskeletal abnormality or muscle atrophy, and noted full strength in all extremities with no sensory deficit. Record at 509. As to Mason's hands, Dr. Saltzgaber wrote: "Hand and finger dexterity intact. He was able to button, zip, and tie. Grip strength 5/5 bilaterally." *Id*.

In a Medical Source Treatment form, Dr. Saltzgaber indicated that Mason could carry 20 pounds frequently, and up to 100 pounds occasionally. Record at 510. He could walk four hours, stand six hours, and sit eight hours in an eight-hour workday. Record at 511. He could frequently engage in handling, fingering, and feeling. Record at 512. Dr. Saltzgaber checked off that Mason could engage in all activities listed on the form, including shop, travel without a companion for assistance, and "sort, handle, and use paper files." Record at 515.

In a separate part of the form, Dr. Saltzgaber indicated that Mason could also read ordinary newspaper or book print, and determine differences in shape and color of small objects, although he could not read "very small print." Record at 513. However, he also checked off that Mason would not be able to "avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar, or approaching people or vehicles." *Id*.

The ALJ found Dr. Saltzgaber's opinion "only somewhat persuasive." Record at 24. He explained that the limitation to four hours a day of walking was inconsistent with Mason's normal gait, stance, ability to heel/toe walk and squat, as well as his normal strength and range of motion. *Id*. The ALJ also wrote:

> In addition, Dr. Saltzgaber's answer as to workplace hazards is inconsistent with the answers he provided. As such, this answer appears to be an error on Dr. Saltzgaber's part. If not an error, then that limitation (i.e., that the claimant cannot avoid workplace hazards) is unsupported by objective evidence and unsupported by Dr. Saltzgaber's own narrative report and observations.

*Id*.

Ms. Mason argues that the ALJ's rejection of these two aspects of Dr. Saltzgaber's report, i.e., (a) the limitation in walking and (b) the inability to avoid workplace hazards, was inconsistent with the medical evidence as a whole. However, the record does not support Ms. Mason's claims.

As to Mason's limitation to four hours of walking, the ALJ clearly explained what evidence he relied upon in rejecting it – the overwhelmingly normal physical findings. This certainly created an "accurate and logical bridge between the evidence and the result." *Fleck v. Kijakazi*, Civ. A. No. 21-75, 2022 WL 1203845 at *4 (W.D. Pa. Apr. 22, 2022). Ms. Mason points to the somewhat decreased reflexes Dr. Saltzgaber found in Mason's legs, but it is not clear how this would impair walking in the absence of any sign of sensory deficit or muscle weakness.

Ms. Mason also points to the evidence that Mason had a diabetes-related ulcer on his right foot which took time to heal, and which he told Dr. Saltzgaber at the July 2020 examination would be the subject of a surgical evaluation for possible osteomyelitis. Record at 506. However, Mason also told Dr. Saltzgaber that, with reference to the ulcer, he "does not really

6

have any pain and is able to ambulate without problems with the foot." Record at 507. Further, treatment notes from Mason's general practitioner indicate that the ulcer first developed in June 2020 and healed by October 27, 2020. Record at 532, 536. Thus, even if the ulcer had caused an impairment in Mason's walking (contrary to what he told Dr. Saltzgaber), it did not last for the statutory twelve-month period required for a finding of disability. 42 U.S.C. §423(d)(1).

As to Mason's vision, Dr. Siokos, the consulting opthalmologist, completed the same form completed by Dr. Saltzgaber and indicated that Mason *could* avoid ordinary workplace hazards. Record at 560. Even if the ALJ had not concluded that Dr. Saltzgaber's finding was inconsistent with his other findings (which was logical, since it is hard to believe that Dr. Saltzgaber would have found Mason could travel alone if he could not see approaching vehicles), he could simply have chosen to credit Dr. Siokos's opinion over that of Dr. Saltzgaber, who was an internist and not an eye specialist. Specialization is a factor which an ALJ is entitled to consider when assessing the persuasiveness of a medical opinion. 20 C.F.R. §404.1520c(c)(5).

Ms. Mason also makes the surprising suggestion that Mason's walking was impaired by the "mild" degenerative changes noted in his spine when his chest was x-rayed during his final hospitalization for COVID. Record at 708, 709, 733, 767. Without any evidence in the record that Mason ever complained of back pain, this suggestion must be rejected. Ms. Mason has not, therefore, demonstrated any error in the ALJ's treatment of Dr. Saltzgaber's report.

B.  *Dr. Siokos's Opinion*

Dr. Siokos, the consulting eye expert, examined Mason on January 18, 2021. Record at 554. After conducting a full eye examination, he diagnosed Mason with mixed astigmatism in both eyes; mild cataracts in both eyes; "mild, non-proliferative" diabetic retinopathy, greater in the left eye than in the right; and macular edema in both eyes. *Id*. He found that Mason had a normal visual field, and that his best corrected visual acuity was 20/40 in the right eye, but only 20/200 in the left eye. Record at 556.

Clearly, Mason had impaired vision. As discussed above, however, Dr. Siokos found that Mason would be able to avoid ordinary hazards in the workplace. Record at 560. He also indicated that Mason could read newspaper or book print, and view a computer screen, although he could not read very small print. *Id*. He could "determine differences in shape and color of small objects." *Id*. Dr. Siokos agreed with Dr. Saltzgaber that Mason could shop and travel without a companion for assistance, but found that Mason could not sort, handle, and use paper files. Record at 562.

The ALJ wrote that Dr. Siokos's opinion was "persuasive and supported by the vision record and the testimony." Record at 24. Ms. Mason argues that, having accepted Dr. Siokos's report in full, the ALJ erred in failing to specify in the RFC assessment that Mason could not use paper files. She also faults the ALJ for finding that Mason could read normal print, since he could not use paper files (although, notably, this is what Dr. Siokos found).

The ALJ, however, carefully elicited from the vocational expert information relevant to Ms. Mason's concerns. The vocational expert testified that Mason's past relevant work required the ability to read normal print, but that his visual acuity would only have to be "average," which

8

meant that it could be "cloudy," and that – in any event – visual acuity would be required "only occasionally." Record at 58.

Further, the ALJ went on to ask the vocational expert if medium-level jobs were available if Mason was not able to read normal print and work with "normal-sized" objects, but could only read large print and work with large objects. Record at 59. The vocational expert responded that, although Mason could not return to his prior work in that case, he could work as a bagger, candy spreader or patient transporter. Record at 59-60. As noted above the ALJ included this as an alternative holding in his decision. Record at 25.

Thus, the ALJ anticipated and resolved the concerns Ms. Mason raises here. He identified jobs Mason could perform even if he was not able to work with normal-sized print in any fashion. Accordingly, the ALJ's treatment of Dr. Siokos's report did not render it unsupported by substantial evidence.

    C.    *The Subjective Allegations*

At the hearing before the ALJ, Ms. Mason testified that she had been living apart from her husband for about four years before he passed away, but that she visited him four days per week to help him. Record at 40, 41-2. She described Mason as suffering from double vision and pain and numbness in his hands and legs. Record at 40, 41, 45, 47-8. She said that Mason was unable to cook because he could not grip such things as a knife, and that he dropped objects due to numbness in his hands, and could grasp things only with both hands. Record at 41, 50-51. Ms. Mason testified that either she or Mason's brother, with whom he lived, did all of his shopping, cooking, cleaning and laundry, and assisted him with bathing and dressing. Record at 50-53. Further, according to Ms. Mason, her husband could read only large-sized print, and spent most of the day lying down. Record at 43, 50.

9

In accordance with the two-step analysis prescribed by 20 C.F.R. § 404.1529(b) and SSR 16-3p, the ALJ first found that Mason's medically determinable impairments could reasonably have been expected to cause the symptoms alleged. Record at 21. However, at the second stage he found that Ms. Mason's testimony regarding the "intensity, persistence and limiting effects" of these symptoms was not entirely consistent with the medical record. *Id*.

The ALJ followed this statement with a two and a half-page discussion of Mason's medical records. Record at 21-23. Mason nevertheless argues that the ALJ's decision was "not supported by substantial evidence because he failed to give adequate explanation to support his conclusions as the regulations require." *Plaintiff's Brief* at 14.

As the Commissioner notes in her response, it is not enough for a petitioner to point to evidence which might have supported the ALJ in deciding the case differently:  this Court must defer to the Commissioner's decision as long as it is supported by substantial evidence. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

The Commissioner's decision in this regard was, indeed, supported by substantial evidence. Most notably, Mason's own representations about his functional capacity flatly contradicted Ms. Mason's testimony. At a preop examination on June 29, 2020, preceding exploratory surgery on his foot ulcer, Mason told his general practitioner that he "was able to perform heavy work around the house and walk up multiple flights of stairs without getting short of breath." Record at 806. Swinging for the gates, Ms. Mason argues that "Dr. Saltzgaber opined that Plaintiff was limited in his ability to walk more than 4 hours, not in his ability to climb stairs for 4 hours." *Plaintiff's Reply* at 6. This is not a convincing argument.

Even if Mason exaggerated his abilities on June 29, 2020, possibly to ensure he was cleared for surgery, the record contains other representations from Mason that his physical capacities were fairly intact. On a form Mason completed at his July 21, 2020, examination by Dr. Saltzgaber, he indicated that he "currently" was able to drive. Record at 521. He also indicated that he cooked once a week, cleaned four or five times per week, shopped for food once a week, did his laundry once per month, and showered or bathed and dressed himself every day. *Id*. He watched TV, read, and did online social media activities. *Id.* Mason also checked off "no" in response to the question "Do you need help at home?", where "help" included "family." *Id*. Dr. Saltzgaber included these representations in his report. Record at 508.

Mason filled out the same form six months later for Dr. Siokos. Record at 566. He still maintained that he could drive at times. *Id*. He also indicated that he cooked twice a week, cleaned twice a week, and shopped and did laundry once per month each. *Id*. He bathed or showered, and dressed himself, every day. *Id*. Again, he watched TV, read, and did online social media activities. *Id*.

According to Mason himself, then, he was able to do a great deal more than Ms. Mason described. This is consistent with Dr. Saltzgaber's observations of Mason's normal stance, normal gait, ability to squat, and not only full muscular strength, but also normal grip strength and the ability to button, zip and tie. Record at 509. It is also consistent with Dr. Siokos's report about Mason's vision. Without discussing the medical record in more detail, therefore, it is clear that substantial evidence supported the ALJ in finding that Ms. Mason's subjective representations were not entirely consistent with the medical record. Record at 21.

V.      *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE